UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

BILLY VAN WINKLE, JR.                    CASE NO.  6:19-CV-01264

VERSUS                                   JUDGE ROBERT R. SUMMERHAYS

JAMES ARTHUR ROGERS, ET AL.              MAGISTRATE JUDGE WHITEHURST

MEMORANDUM RULING

Before the Court is a Motion for Sanctions for Spoliation of Evidence filed by Plaintiff, Billy C. Van Winkle, Jr.[1] Defendants, James Arthur Rogers, Ace American Insurance Company, and New Prime, Inc. ("Prime"), oppose the motion.[2] Plaintiff has filed a brief in reply.[3] For the reasons that follow, Plaintiff's motion is DENIED.

I.
BACKGROUND

On February 6, 2018 at approximately 9:15 p.m., Plaintiff was driving west on Interstate 10 behind a tractor-trailer owned by Prime and operated by Rogers. Plaintiff alleges that the right rear tire of Rogers' trailer "came apart and was thrown into the roadway, which Plaintiff, unable to avoid the debris, then struck, causing the Plaintiff's injuries."[4] Plaintiff filed suit in the 15th Judicial District Court for the Parish of Acadia in January 2019 against Rogers, Prime (Rogers' employer), and Ace American Insurance Company (Prime's insurer). Defendants removed the case to this Court in September 2019, asserting diversity jurisdiction. Plaintiff now seeks sanctions for Defendants' alleged spoliation of evidence, "including but not limited to the destruction of the tire

---

[1] ECF No. 94.
[2] ECF No. 106.
[3] ECF No. 122.
[4] ECF No. 61 at 2, ¶ 3; *see also* ECF No. 80-1 at 5.

that failed on March 19, 2018."[5] Defendants contend the tire was destroyed "in the regular course

of business," before they "had notice of any potential claim by Plaintiff."[6] Specifically, Toby Hunt

(a trainee driver with Rogers at the time of the accident) testified that immediately after the

accident, he pulled the debris to the side of the road.[7] Prime then requested that a Road Assist

company replace the right, rear trailer tire, and that it "put scrap in the rack under the trailer if

possible."[8] According to Prime, the remnants of the tire and rim were then transported to Prime's

facility in Salt Lake City, Utah and were disposed of on March 18, 2018.[9]

## II.
### APPLICABLE LAW[10]

Spoliation of evidence "is the destruction or the significant and meaningful alteration of

evidence."[11] "The party seeking the sanction bears the burden of proof."[12] Where the alleged

destruction of evidence occurs before suit is filed, a trial court's authority to impose sanctions rests

in its "inherent power to regulate the litigation process."[13] "A spoliation claim has three elements:

(1) the spoliating party must have controlled the evidence and been under an obligation to preserve

it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the

---

[5] ECF No. 94 at 2.

[6] ECF No. 106 at 9.

[7] ECF No. 106-3 at 5, 8.

[8] ECF No. 94-4.

[9] ECF No. 106 at 5; *see also* ECF No. 94-5 at 2-3.

[10] In support of his spoliation motion, Plaintiff solely relies upon federal jurisprudence. Further, Plaintiff does not seek damages for the alleged spoliation. Accordingly, the Court will apply federal rules of decision, rather than Louisiana decisions addressing independent tort claims for intentional spoliation of evidence. *See e.g. Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (where jurisdiction is premised upon diversity, federal courts apply federal evidentiary rules rather than state spoliation laws).

[11] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (quoting *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 612 (S.D.Tex. 2010)).

[12] *Hunt v. Marquette Transp. Co. Gulf–Inland, LLC*, 2011 WL 3924926 (E.D.La. Aug. 5, 2011) (citing *Rimkus*, 688 F.Supp.2d at 615–16).

[13] *Coastal Bridge Company, LLC v. Heatec, Inc.*, 833 Fed.Appx. 565, 573 (5th Cir. 2020) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991)).

moving party must show that the spoliating party acted in bad faith."[14] If a party intentionally destroys evidence in order to deprive opposing parties of its use, the trial court may impose sanctions on the responsible party.[15] Such sanctions can include an award of attorney's fees, deeming certain facts admitted, an adverse inference instruction, exclusion of the spoliated evidence, or dismissal of claims or defenses.[16] The seriousness of the sanctions depends on the consideration of: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future."[17] However, where the Court is relying upon its inherent powers, its "powers may be exercised only if essential to preserve the authority of the court and the sanction chosen must employ the least possible power adequate to the end proposed."[18]

### III.
### ANALYSIS

Plaintiff argues that by destroying the tire, Defendants have made it impossible for Plaintiff to have the tire inspected or tested, thereby "substantially hinder[ing] Mr. Van Winkle's ability to determine the cause of the tire failure in this litigation."[19] According to Plaintiff, the failed tire is "the most critical piece of evidence in this case," because an inspection and testing of the tire

---

[14] *Coastal Bridge* at 573 (citing *Port of South Louisiana v. Tri-Parish Industries, Inc.*, 927 F.Supp.2d 332, 346 (E.D. La. 2013)).

[15] *Coastal Bridge* at 573; *Port of S. La.* at 346.

[16] *See e.g. Crain v. City of Selma*, 952 F.3d 634, 639 (5th Cir. 2020); *Port of S. La.* at 346; *Repass v. Rosewood Hotels & Resorts, LLC*, 184 F.Supp.3d 401, 405 (N.D. Tex. 2015).

[17] *Coastal Bridge* at 573 (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994)).

[18] *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir.1996) (internal quotation marks omitted) (quoting *Anderson v. Dunn*, 19 U.S. (6 Wheat) 204, 231 (1821)).

[19] ECF No. 94-1 at 9.

"would have revealed whether the blowout occurred due to a manufacturing defect, due to poor tire condition and maintenance, or was caused by a road hazard.[20] The Court now turns to whether Plaintiff has met his burden of proof with regard to the first element of a spoliation claim.

## A.   Whether Prime was under an obligation to preserve the failed tire at the time of its destruction.

"A general duty to preserve evidence arises when a party reasonably anticipates litigation, when a party has notice that the evidence is relevant to litigation, or when a party should have known that the evidence may be relevant to future litigation."[21] Plaintiff argues Prime's duty to preserve the tire arose the day the accident occurred, because Prime knew Plaintiff was injured and his car was towed from the scene the same day, and therefore Prime should have reasonably anticipated litigation at that time.[22] In support, Plaintiff points to messages between Rogers and personnel at Prime on the day of the accident, delivered through Prime's Qualcomm system, and notifying Prime that Plaintiff's vehicle suffered severe damage and that Plaintiff was taken to the hospital for evaluation. Specifically, at 9:07 p.m., Rogers advised Prime personnel that he "blew" a tire on his trailer just before mile marker 65 westbound.[23] Shortly thereafter, Rogers advised Prime that Plaintiff's vehicle was "hit by debris from the blow out."[24] A few minutes later, Rogers advised Prime that Plaintiff's vehicle was "severely damaged."[25] At 9:19 p.m., Rogers messaged Prime that emergency crews were on the way and law enforcement had arrived.[26] At 9:28 p.m.,

---

[20] *Id.* at 12.
[21] *Schouest v. BP Products N. Am., Inc.*, 2010 WL 11597844, at *1 (W.D. La. June 2, 2010); *see also Guzman*, 804 F.3d at 713 ("A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant.")
[22] ECF No. 94-1 at 13.
[23] ECF No. 94-2.
[24] *Id.*
[25] ECF No. 94-3 at 2.
[26] *Id.*

Rogers submitted an accident report to Prime indicating that Plaintiff was complaining of chest pain, and Plaintiff's vehicle had been towed.[27] At 9:36 p.m., Rogers advised Prime that Plaintiff had been taken to the hospital, that he was complaining of chest pain, and that he had been released from the hospital three days prior after having heart stents inserted.[28]

Plaintiff further notes that Prime originally withheld its adjustor's "claim notes," arguing the claim notes constituted "work product prepared in anticipation of litigation," and did not provide them to Plaintiff until January 4, 2022.[29] Because claim notes were entered on February 6, 2018 and March 8, 2018, and because Prime withheld them on the basis of work product prepared in anticipation of litigation, Plaintiff asserts "Prime admits it was anticipating litigation with the plaintiff at the time those claims notes were prepared."[30] Alternatively, Plaintiff contends that at the latest, Prime's duty to preserve the failed tire arose on March 8, 2018, when Plaintiff's original counsel attempted to email a letter of representation to Prime.

Prime responds that it "did not reasonably anticipate the likelihood of litigation until well after the destruction of the tire on March 19, 2018."[31] Prime notes that Plaintiff did not complain of injuries related to the accident at the scene, and he informed the investigating officer that he was not injured from the crash.[32] Rather, according to the accident report, Plaintiff told the responding officer that he had undergone a "medical procedure on his heart" a few days prior, and he was taken to the hospital to have that checked.[33] Defendant notes Plaintiff made no complaints

---

[27] *Id.* at 1.
[28] *Id.*
[29] ECF No. 94-1 at 13-14.
[30] *Id.* at 14 (emphasis omitted).
[31] ECF No. 106 at 12.
[32] *Id.* at 13 (citing ECF No. 106-10).
[33] ECF No. 106-10 at 7.

at the hospital other than chest pain.[34] Prime additionally notes that although Rogers characterized the damage to Plaintiff's vehicle as "severe," the police report indicated the damage was "minor," and no citations were issued.[35] Prime further argues that the fact that it created claim notes prior to destruction of the tire does not mean that it anticipated litigation.[36] Rather, when an accident results in someone being transported from the scene for treatment or results in a vehicle being towed from the scene for disabling damage, Prime is required to report the accident to the Federal Motor Carrier Safety Administration.[37] Finally, Prime contends it did not receive the letter of representation which Plaintiff's original counsel attempted to send on March 8, 2018, as that letter was sent to an incorrect email address.[38] Prime points out that the "delivery receipt" provided by Plaintiff as proof that Prime received the letter of representation states, "Delivery to these recipients or groups is complete, but no delivery was sent by the destination server," thereby indicating Prime did not receive the correspondence.[39] According to Prime, its first notice that Plaintiff was pursuing litigation for the accident was received on May 6, 2018, which was after the tire had been recycled.[40]

"Identifying the trigger for when a party should have reasonably anticipated litigation is challenging, as it varies based on the facts and circumstances."[41] Here, Plaintiff has not shown Prime received the March 8, 2018 letter of representation prior to destruction of the tire.

---

[34] ECF No. 106 at 13 (citing ECF No. 106-4).
[35] *Id.* (citing ECF No. 106-10).
[36] *Id.* at 18.
[37] *Id.* at 19.
[38] *Id.* at 14-15. Prime further notes that if the letter was also sent by mail, the physical address on the letter was also incorrect and it was not received. *Id.* at 15.
[39] *Id.* at 17 (citing ECF No. 94-18).
[40] *Id.* at 8, 20 (citing ECF No. 94-17 at 6).
[41] *Coastal Bridge* at 574 (citing *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F.Supp.2d 942 (S.D. Tex. 2010)).

Nevertheless, the Court finds in light of Prime's knowledge that Plaintiff 's vehicle had to be towed from the scene and that Plaintiff was taken to the hospital by ambulance, Prime reasonably should have anticipated litigation at the time of the accident, and therefore it had a duty to preserve the failed tire.[42] As the second element for a spoliation claim is not in dispute (i.e., whether the evidence was intentionally destroyed), the Court turns to whether Prime acted in bad faith when it disposed of the tire.

**B.      Whether Prime destroyed the subject tire in bad faith.**

"Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."[43] "Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors."[44] Here, Plaintiff contends the following facts and arguments, taken cumulatively, show Prime destroyed evidence in bad faith: (1) destruction of the failed tire; (2) withdrawal of a prior admission of fact; (3) improper withholding of claims notes; (4) engaging in "stonewalling" and deceptive discovery tactics; (5) attempting to "hide" the identity of the manufacturer of the failed tire; and (6) failing to maintain records regarding remanufactured tires. The Court summarizes each of these allegations and Prime's responses in turn.

---

[42] *See e.g. Coastal Bridge* at 574; *see also* ECF No. 106 at 5-6.

[43] *Guzman*, 804 F.3d at 713.

[44] *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F.Supp.3d 728, 769 (E.D. La. 2019), *aff'd sub nom. SCF Waxler Marine, L.L.C. v. Aris T M/V*, 24 F.4th 458 (5th Cir. 2022), (quoting *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007)).

### 1.    Destruction of the failed tire

Plaintiff contends Prime intentionally destroyed the tire at issue in order to "rob" Plaintiff of direct evidence in support of his claim.[45] In support, Plaintiff notes that almost immediately after the accident, Rogers advised Prime that Plaintiff had been transported to the hospital by ambulance, and that Plaintiff's car sustained "severe damage."[46] Plaintiff notes that on February 8, 2018, Prime's claim adjustor noted Rogers had a "tire blow out" and Plaintiff's vehicle hit the debris.[47] Finally, Plaintiff argues that in the course of discovery, he "has not come across a single instance of Prime inspecting or preserving, or even having a policy to inspect and preserve, one of its failed tires that caused an injury."[48]

Prime responds that it disposed of the tire at issue in the regular course of business before it had notice of any potential claim by Plaintiff. In support, Prime cites to the deposition testimony of Brandon Cantrell, the manager of Ecotire Retreading Facility and Ecoshred Tire Recycling Facility (both of which are affiliates of Prime), who testified Prime routinely has scrap tires returned to its facility for disposal in order to recycle the scrap and to avoid the disposal fees charged by third parties.[49] Prime further notes that it does have "a preservation policy for evidence following notice of a claim," and submits the affidavit of its Corporate Counsel in support.[50]

### 2.    Withdrawal of a prior admission of fact.

Plaintiff notes that in response to a request for admission, Prime originally admitted that it did receive the March 8, 2018 letter of representation. Plaintiff claims Prime is now "pretending"

---

[45] ECF No. 94-1 at 17-18, 31.
[46] *Id.* at 17-18.
[47] *Id.* at 18; *see also* ECF No. 94-9 at 3.
[48] ECF No. 94-1 at 16.
[49] ECF No. 106 at 9, 18 (citing ECF No. 106-9 at 2; ECF No. 106-11 at 7-8).
[50] ECF No. 106-7 at 1-2.

that letter was never received, and that it "withdrew its admission of fact in bad faith."[51] As detailed previously in this litigation, counsel for Prime did not realize that the original letter of representation was sent to an incorrect email address until the deposition of Prime's claims adjustor.[52] After that discovery, Prime was permitted to withdraw its prior response to Plaintiff's request for admission.[53] It is Plaintiff's burden—not Prime's—to show that the original letter of representation was timely received by Prime.[54] As previously discussed, Plaintiff has failed to carry his burden on this issue.

### 3. Improper withholding of claims notes.

The majority of this argument is geared toward showing that Defendants knew Plaintiff had retained an attorney to represent him for personal injuries sustained in the accident, and therefore Defendants disposed of the tire in bad faith. As the Court has found that Plaintiff has failed to show Prime had notice of Plaintiff's representation prior to destruction of the tire, *see* section III(A), *supra*, the Court will not repeat those arguments and findings here.[55] The remainder of the argument is geared toward showing Plaintiff has suffered prejudice as a result of the alleged late disclosure of claims notes and is not relevant to the issue of bad faith.[56]

---

[51] ECF No. 94-1 at 18-19.
[52] ECF No. 76 at 1-2.
[53] *Id.* at 3.
[54] *See e.g. Coastal Bridge* at 573, 574.
[55] *See also* ECF No. 76.
[56] Further, Plaintiff had remedies available to cure the alleged prejudice. For example, Plaintiff complains that had the claim notes been timely provided, he could have deposed a witness identified therein and perhaps then filed a dispositive motion based upon that testimony. ECF No. 94-1 at 23. Yet, Plaintiff failed to request an extension of the discovery and dispositive motion deadlines in light of this new information he alleges was untimely produced. *Id.*

4.      **"Stonewalling" and deceptive discovery tactics.**

Plaintiff argues (without citation to the record) that despite a discovery request in January of 2019, Prime provided only "some of its internal repair orders/invoices for the trailer (and tires) involved in the incident," and did not provide the remaining repair orders and invoices until July of 2021."[57] Plaintiff notes that in his second set of discovery propounded in April 2021, he asked for specific information about the failed tire, to which Prime responded, "[T]he tire at issue in this litigation was an Ecotire Wide Base Trailer Tire, purchased new from Ecotire Manufacturing. . . . The tire was not assigned a unique identifying number."[58] Plaintiff then states that he "had to research 'Ecotire Manufacturing' on the internet" to learn that Ecotire is affiliated with Prime and is "not an independent third-party manufacturer."[59] From the foregoing, Plaintiff concludes Prime deliberately failed to disclose its affiliation with Ecotire, because "manufacturers of products are presumed to have knowledge of the defects in the things they make."[60] Plaintiff further concludes that Prime deliberately stated it purchased the tire "new" in order to mislead Plaintiff and conceal the fact "that the failed tire was an old retread that could have [been] recapped multiple times before it finally failed in February of 2018."[61]

Prime responds that Plaintiff's first round of discovery in January 2019 was "form discovery" that did not request any information regarding the failed tire.[62] Indeed, as Prime correctly notes, the original Petition (filed the same day as the initial discovery) solely asserted a claim for Rogers' negligent operation of his tractor-trailer; no allegations were made claiming that

---

[57] ECF No. 94-1 at 23.
[58] *Id.* at 24 (citing ECF No. 94-20 at 3).
[59] *Id.*
[60] *Id.*
[61] *Id.* at 25, 26.
[62] ECF No. 106 at 24 (citing ECF No. 106-12).

Prime was liable for this accident due to its custody and ownership of an allegedly defective tire.[63] Prime contends it was not until it filed its first Motion for Summary Judgment on February 18, 2021 "that Plaintiff realized he had not engaged in sufficient discovery to address Defendants' defenses."[64] Plaintiff then propounded his second set of discovery in April 2021, wherein he first requested specific information regarding the failed tire.[65] Prime further contends that its response to Plaintiff's discovery—that the tire at issue was "purchased new from Ecotire Manufacturing"— was not misleading, as a retreaded tire is considered a new tire in the trucking industry, even though it is not a "virgin tire."[66] Prime additionally notes Plaintiff's Interrogatory "did not ask if the tire was retreaded prior to its purchase."[67]

### 5. Identity of the manufacturer of the failed tire.

Plaintiff contends that Defendants "hid the fact that this was a recapped Ecotire as long as they could" in order to prevent Plaintiff from discovering that Ecotire offers a one-year warranty for its tires.[68] Plaintiff states he learned of the warranty program at a deposition held on January 4, 2022.[69] According to Plaintiff, the failed tire was within the warranty period at the time of the accident, but if "Prime had deemed the retread covered under Ecotire's warranty, this fact would constitute an admission that the remanufactured tire was considered by Prime and Ecotire to be defective."[70] Finally, Plaintiff points to testimony that Ecotire generates a work order for the

---

[63] *Id.* at 24; *see also* ECF No. 1-1 at 35-36.
[64] *Id.* at 25; *see also* ECF No. 22. After the filing of Prime's motion, Plaintiff sought and was granted a continuance of the trial and pretrial deadlines in order to conduct additional discovery, and Prime's motion was denied without prejudice to its right to re-urge the motion. ECF No. 40
[65] ECF No. 106 at 25; *see also* ECF No. 106-12 at 88; ECF No. 106-13.
[66] *Id.*; *see also* ECF No. 94-7 at 12-13.
[67] *Id.* at 25.
[68] ECF No. 94-1 at 26.
[69] *Id.*
[70] *Id.* at 27.

retreaded tires it manufactures, but states that he has not been provided with the work order for the tire at issue "despite several requests."[71]

Prime responds that it made no effort to conceal its affiliation with Ecotire, noting that information is available by a "simple internet search."[72] Prime further responds that Plaintiff did not request information about warranties until his fourth set of discovery propounded on January 7, 2022.[73] In conformity with its discovery response, Prime asserts it "did not pursue a claim with Ecotire under the warranty, as all information confirmed the tire failed due to striking a defect in the roadway."[74]

### 6.    Failure to maintain records regarding remanufactured tires.

Plaintiff cites a Department of Transportation rule which requires a "tire retreader" to "conspicuously label at least one sidewall of each tire it retreads by permanently molding or branding into or onto the sidewall" a tire identification number ("TIN"), consisting of seven symbols.[75] The TIN identifies the identity of the retreader and the week and year of manufacture.[76] Plaintiff cites to testimony from an Ecotire employee that each time a tire is retreaded, the tire receives a new TIN number. Thus, if a tire has its original thirteen-symbol TIN number stamp, as well as two seven-symbol stamps, that tire has been retreaded two times.[77] Plaintiff then points to testimony that Prime keeps no alternative documentation identifying the number of times a tire has been retreaded, and the only way to determine the number of times a tire has been retreaded is by

---

[71] *Id.* The Court notes Plaintiff does not state whether he filed a motion to compel production of this information.
[72] ECF No. 106 at 26.
[73] *Id.* at 26; *compare* ECF No. 106-12 at 108 *with* ECF No. No. 94-5 at 3 *and* ECF No. 94-16 at 1-3.
[74] ECF No. 106 at 26; *see also* ECF No. 106-11 at 3-6; ECF No. 106-12 at 108.
[75] ECF No. 94-1 at 28 (citing 49 C.F.R. 574.5).
[76] 49 C.F.R. 574.5(a)(2), (b)(1), and (b)(3).
[77] ECF No. 94-1 at 28 (citing ECF No. 94-6 at 14).

looking at the TIN on the sidewall of the tire itself.[78] From the foregoing, Plaintiff concludes Prime deliberately fails "to track and record this information" in order to "ensure that this information is unavailable in the event of an accident."[79] Prime responds that they are in compliance with all federal laws and regulations, which do not require separate paper or electronic records of TIN numbers.[80] Prime thus concludes that Plaintiff's "attempt to frame the lack of records as bad faith on the part of Defendants is distinctly without merit."[81]

While the Court agrees the tire remnants are relevant to Plaintiff's claims and that Prime had a duty to preserve that evidence, after an exhaustive review of the arguments and evidence presented, the Court finds Plaintiff has not satisfied his "high burden of demonstrating bad faith" on the part of Defendants.[82] Although Prime should have preserved the tire, Plaintiff's arguments that Prime intentionally destroyed the tire in bad faith in order to hide adverse evidence from Plaintiff are highly speculative. As noted, this suit originally solely alleged negligence on the part of Rogers. From the evidence presented, it was not until April of 2021, more than three years post-accident, that Plaintiff began to investigate whether the tire that failed was defective. For all of these reasons, the Court finds Plaintiff has failed to show Defendants acted in bad faith, and therefore Plaintiff's motion for spoliation sanctions will be denied. Nevertheless, the Court finds Plaintiff has been prejudiced due to his inability to inspect and test the failed tire. Accordingly, at the trial of this matter, the Court will permit Plaintiff to question witnesses in detail as to the

---

[78] ECF No. 94-1 at 28 (citing ECF No. 94-6 at 14-15).
[79] *Id.* at 28.
[80] ECF No. 106 at 28.
[81] *Id.*
[82] *Wright v. National Interstate Ins. Co.*, 2017 WL 4011206, *3 (E.D. La. Sep. 12, 2017); *Espinoza v. Hector Gabriel Chavarria and VRP Transp. Inc.*, 2022 WL 136465, *5 (W.D. Tex. Jan. 14, 2022).

destruction of the failed tire. Further, Plaintiff will be permitted to argue whatever inference he urges should be drawn due to the absence of the failed tire.[83]

## IV.
### CONCLUSION

For the foregoing reasons, the Motion for Sanctions for Spoliation of Evidence filed by Plaintiff is DENIED.

THUS DONE in Chambers on this 7th day of September, 2022.

**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**

---

[83] *See e.g. United States v. Wise*, 221 F.3d 140, 156–57 (5th Cir. 2000); *Willis v. Cost Plus, Inc.*, 2018 WL 1319194, *6 (W.D.La. March 12, 2018).