# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**BILLY VAN WINKLE JR**                    **CASE NO.  6:19-CV-01264**

**VERSUS**                                              **JUDGE ROBERT R. SUMMERHAYS**

**JAMES ARTHUR ROGERS ET AL**      **MAGISTRATE JUDGE CAROL B. WHITEHURST**

## MEMORANDUM RULING

The present matter before the Court is the Motion to Exclude or Limit the Testimony of Roger Allen filed by defendants James Arthur Rogers, Ace American Insurance Company, and New Prime, Inc. d/b/a, Prime, Inc. ("Defendants") [ECF No. 92]. Mr. Allen is Plaintiff Billy C. Van Winkle, Jr.'s commercial trucking industry and safety expert. Van Winkle opposes the motion. As explained further below, the Court GRANTS the motion in part and DENIES the motion in part.

## I.
### BACKGROUND

On February 6, 2018 at approximately 9:15 p.m., Plaintiff was driving west on Interstate 10 behind a tractor-trailer owned by Prime and operated by Rogers. Plaintiff alleges that the right rear tire of Rogers' trailer "came apart and was thrown into the roadway, which Plaintiff, unable to avoid the debris, then struck, causing the Plaintiff's injuries."[1] Plaintiff filed suit in the 15th Judicial District Court for the Parish of Acadia in January 2019 against Rogers, Prime (Rogers' employer), and Ace American Insurance Company (Prime's insurer). Defendants removed the case to this Court in September 2019, asserting diversity jurisdiction. Van Winkle timely disclosed

---

[1] ECF No. 61 at 2, ¶ 3; *see also* ECF No. 80-1 at 5.

1

Roger Allen as his proposed expert on commercial trucking and safety regulations and practices. In the present motion, Defendants seek to limit or exclude the testimony of Mr. Allen.

## II.
### DISCUSSION

**A. Legal Standards for Expert Testimony.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. A witness may be qualified as an expert through knowledge, skill, experience, training, or education.[2] A qualified expert may testify as to his or her opinion if that opinion is based upon sufficient facts and data, is the result of reliable application of reliable principles and methods to the facts of the case, and if the expert's "scientific, technical, or other specialized knowledge" will help the finder of fact understand the evidence or determine a fact at issue.[3] Rule 702 imposes an obligation on a trial court to ensure that expert testimony—whether scientific or not—is not only relevant, but reliable.[4] An expert's opinion may be based on facts or data in the case of which the expert has been made aware or which he or she has personally observed.[5] An expert may not render legal conclusions or provide opinions on legal issues.[6]

Expert testimony is relevant if it is shown "that the expert's reasoning or methodology can be properly applied to the facts in issue."[7] To be reliable, expert testimony must be "grounded in the methods and procedures of science and … be more than unsupported speculation or subjective belief."[8] The proponent of expert testimony has the burden to show by a preponderance of the

---

[2] Fed. R. Evid. 702.
[3] *Id.*
[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).
[5] Fed. R. Evid. 703.
[6] *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020) (citing *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)).
[7] *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (citing *Curtis v. M & S Petroleum, Inc.* 174 F.3d 661, 668 (5th Cir.1999)).
[8] *Id.*

evidence it is reliable, not that it is correct.[9] "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*."[10]

The questions of relevance and reliability are the Court's overarching concern.[11] The analysis should be performed with an eye toward whether the expert opinion will assist the trier of fact, which requires that a proffered expert be able to "bring to the jury more than the lawyers can offer in argument."[12] Whether an expert's opinion would be helpful to the trier of fact is a low bar and turns largely on whether the testimony is relevant; questions related to the bases and sources of an expert's opinion go to the weight of the testimony rather than its admissibility.[13] The Court's role is not to displace the adversary system, but to ensure that the disputed evidence is "sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration."[14] Exclusion of expert testimony is the exception rather than the rule—"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[15]

## B.  Regulatory and Industry Standards.

Defendants first challenge Allen's opinions regarding Defendants' compliance with applicable regulatory and industry safety standards and practices. Specifically, Defendants seek to exclude Allen's testimony on the grounds that (1) he is unqualified, (2) his opinions are inadmissible legal conclusions and improperly usurp the role of the Court and the jury, and (3) his opinions are unreliable. The Court first addresses Allen's qualifications. Based on his expert report

---

[9] *Johnson*, 685 F.3d at 459 (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)).
[10] *Id.*
[11] *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293–94 (5th Cir. 2019).
[12] *Id.* (internal citations omitted).
[13] *Id.*
[14] *Id.* (citations omitted).
[15] *Id.* (citing *Daubert*, 509 U.S. at 596).

and CV, the Court concludes that Allen is qualified to offer expert opinions under Rule 702 with respect to the applicable safety regulations and practices governing the commercial trucking industry. Defendants argue that Allen has no formal education past high school and that his driving experience primarily involved school buses.[16] His CV, however, indicates extensive experience driving "[a]ll types of gasoline and diesel engine trucks, tractors, trailers and buses with all types of transmission[s]."[17] Allen's CV also discloses extensive training and experience in the commercial trucking industry, including safety regulations and practices.[18] Moreover, courts have accepted Allen as an expert in commercial trucking safety standards and practices in similar cases.[19] Accordingly, the Court overrules Defendants' objection to Allen based on his qualifications.

Defendants next argue that many of Allen's opinions are either legal conclusions or opinions that improperly invade the role of the Court or the jury. Rule 704 provides that an expert's opinion "is not objectionable just because it embraces an ultimate issue."[20] However, this rule "does not open the door to all opinions."[21] "[Q]uestions which would merely allow the witness to tell the jury what result to reach are not permitted."[22] Similarly, an expert "cannot 'render conclusions of law' or provide opinions on legal issues."[23] This is so, because "allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."[24] As noted by the Fifth Circuit, "[t]he task of separating impermissible

---

[16] ECF No. 92-1 at 2, 13.
[17] ECF No. 92-3 at 1.
[18] *Id*. at 3-7.
[19] *See, e.g., Ortiz v. Ben Strong Trucking, Inc.*, No. 18-3230, 2022 WL 3717217 (D. Md. Aug. 29, 2022); *Amalu v. Stevens Transp., Inc.*, No. 15-cv-1116, 2018 WL 6829044 (W.D. Tenn., Mar. 12, 2018).
[20] Fed. R. Evid. 704(a).
[21] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983).
[22] *Id.*
[23] *Renfroe*, 974 F.3d at 598 (quoting *Goodman*, 571 F.3d at 399).
[24] *Owen*, 698 F.2d at 240.

questions which call for overbroad or legal responses from permissible questions is not a facile one."[25] According to the court:

> The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact-based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read.[26]

Here, Allen's expert report does not segregate and identify each of the opinions on which he will testify at trial. However, the following opinions can be gleaned from his report:

1. By being a motor carrier, Defendants are required to follow all of the Federal Motor Carrier Safety Regulations ("FMCSR") and to instruct and train their employees and drivers in the FMCSR.[27]

2. Prime was required to sign an affidavit swearing to adhere to the FMCSR in order to obtain their U.S. DOT number and authority to operate commercial motor vehicles.[28]

3. As a motor carrier, Prime is required to keep records pertaining to their business. This is detailed in a chart in Part 379 – Preservation of Records of the FMCSR.[29]

4. Prime, as a motor carrier, has a responsibility to ensure the equipment their drivers are operating is in safe, operating condition and is in compliance with the FMCSRs.[30]

5. Prime is required under the FMCSR to have a preventative maintenance program in place and to ensure it is being followed. This is a requirement of FMCSR §396.3 – Inspection, Repair, and Maintenance.[31]

6. Prime is required to keep these maintenance records for all of the equipment under their control for the length of time required under FMCSR §396.3 – Inspection, Repair, and Maintenance.[32]

---

[25] *Id.*
[26] *Id.*
[27] ECF No. 92-2 at 6.
[28] *Id.* at 7.
[29] *Id.*
[30] *Id.* at 8
[31] *Id.*
[32] *Id.* at 10.

7.  To date, Prime has produced some records related to the tires and their replacement for the trailer involved in this collision, but Allen has yet to see a record of routine maintenance for both the tractor and trailer involved in this incident.[33]

8.  Prime cannot state with certainty that the tire that failed was regrooved more than one time. Prime does not follow their own policies and procedures regarding retread tires.[34]

9.  It is important for drivers of commercial motor vehicles to conduct proper and complete pre-trip inspections of their equipment before operating it.[35]

10. FMCSR § 392.7 (Equipment, Inspection and Use) and § 396.13 (Driver Inspection) both explain that drivers may not operate their commercial motor vehicles until they are satisfied they are in good working order and safe operating condition.[36]

11. At this time, I have seen no documentary evidence that Defendant Rogers performed a pre-trip inspection of the truck and trailer he was operating on the date of this incident. It is possible that had a proper pre-trip inspection occurred, any deficiency with the tire that failed could have been detected beforehand.[37]

12. Defendant Rogers does not say how he inspected the tires and the pressure of the tires before he left on this trip. Inspection of tires is required by every driver in their pre-trip and post-trip inspections.[38]

13. "FMCSR 291.1 requires the motor carrier to make sure its drivers including other employees to know the FMCSRs and follow the FMCSRs including the proper pre-trip and post-trip inspections."[39]

14. Defendant Rogers was not acting as a safe and prudent commercial motor vehicle driver when he operated a vehicle with a defective tire that failed and became an immediate roadway hazard that collided with another vehicle. [40]

15. The responsibility of a professional commercial motor vehicle driver to avoid collisions goes beyond mere compliance with traffic laws.[41]

---

[33] *Id*.
[34] *Id*.
[35] *Id*. at 10.
[36] *Id*.
[37] *Id*. at 11.
[38] *Id*.
[39] *Id*.
[40] *Id*. at 12.
[41] *Id*.

16. Professional commercial vehicle drivers must always think and look to avoid hazardous situations. Commercial motor vehicle drivers must use common sense, always work at the highest level of alertness, and have the training and experience to avoid dangerous situations. They must also follow all local and state traffic codes and drive with the utmost respect and courtesy to their fellow road users.[42]

17. The FMCSR are minimum standards for the motor carrier industry.[43]

18. It is clear that Prime and Defendant Rogers ignored these FMCSR. By ignoring these regulations, Prime and Defendant Rogers put the general motoring public in jeopardy.[44]

19. Prime and Defendant Rogers must take responsibility for this collision and the injuries and damages that resulted. Prime failed to use ordinary care, meaning that degree of care that a company of ordinary prudence would use under the same or similar circumstances.[45]

20. Prime at the time of this occurrence caused an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and of which Prime had actual, subjective awareness of the risk involved, yet nevertheless acted with conscious indifference to the rights, safety, and welfare of others.[46]

21. The failures to comply with or even know industry minimum standards for safe commercial vehicle operations along with the other acts and omissions stated above by Prime were a cause of the collision that occurred on February 6, 2018.[47]

22. The incident that occurred on February 6, 2018 was preventable on the part of Prime and on the part of Defendant Rogers.[48]

23. Commercial motor vehicle drivers are required to follow the FMCSR that pertain to them as drivers, as well as state and local traffic laws.[49]

24. Commercial motor vehicle drivers are also required to use the knowledge and skill they should have gained through training and studying for their commercial drivers' licenses and should continue developing their existing skills through their everyday hands-on experiences.[50]

25. Defendant Rogers' actions on the date of the collision reflect poor training, poor judgment, and poor commercial motor vehicle operating skills.[51]

---

[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.* at 13.
[46] *Id.*
[47] *Id.*
[48] *Id.* at 14.
[49] *Id.*
[50] *Id.*
[51] *Id.*

26. Prime failed in vehicle maintenance and safety. Prime has yet to produce proper evidence they have a vehicle maintenance policy or perform routine maintenance on their vehicles. Their failure to document an appropriate safety and maintenance program not only violates the FMCSR but also industry standards that reasonable and prudent motor carriers follow.[52]

27. Implementing a culture of safety within a business or corporation is the only way to minimize hazards and risks to employees, customers, and to the public.[53]

28. A safety culture is a set of shared attitudes, values, goals, and practices that characterize an institution or organization. Developing and implementing a culture of safety means using best practices and going above and beyond the minimum requirements of the law and industry standards.[54]

29. The general motoring public has a right to expect motor carriers that operate on highways for a profit to only hire safe and prudent drivers and train all their drivers in compliance with both State and Federal Regulations. They also have a right to expect these drivers to drive their commercial motor vehicles in a safe and prudent manner given the catastrophic results of collisions with them.[55]

Allen quotes from the FMCSR and provides background on these regulations throughout this report. The Fifth Circuit has held that general background testimony on federal regulations by an expert is admissible as long as the expert is not stating ultimate legal conclusions based upon those background facts.[56] Accordingly, testimony by Allen in this regard is admissible. Allen may quote and refer to relevant safety regulations as this testimony will assist the jury in understanding the standard of care in the trucking industry. However, expert testimony regarding the *meaning* and *applicability* of the FMCSRs to the Defendants and whether Defendants complied with these regulations is inadmissible.[57] This is because "[t]he meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by

---

[52] *Id*.

[53] *Id*.

[54] *Id*. at 14-15.

[55] *Id*. at 15.

[56] *United States v. Dotson*, 817 F.2d 1127, 1132 aff'd in pertinent part on reh'g, 821 F.2d 1034 (5th Cir.1987) (IRS expert permitted to summarize and analyze facts indicating willful tax evasion so long as he did not "directly embrace the ultimate question of whether [the defendant] did in fact intend to evade income taxes."); *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2nd Cir.), cert. denied, 502 U.S. 813 (1992); *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002).

[57] *Bammerlin v. Navistar Int'l Transp. Corp*., 30 F.3d 898, 900 (7th Cir. 1994).

the court."[58] Of the opinions from Allen's report outlined above, the opinions numbered 1-6, 9, 13, 17, 23, and 26 present legal conclusions in the form of expert opinion and are inadmissible. Opinions numbered 19 and 20, *supra*, are inadmissible because the conclusions are so broad that they essentially instruct the jury "how its verdict should read."[59] Allen, however, can testify on general (non-regulatory) industry safety standards and practices, and whether Defendants complied with industry standards and practices.

Defendants next argue that Allen's opinions as to Defendants' compliance with federal regulations and industry standards is unreliable because Allen allegedly failed to consider all of the evidence and "cherry-picked" the evidence supporting his opinions. With respect to compliance with federal regulations, as stated above, Allen's opinions are inadmissible. In all other respects, Allen's opinions on industry standards and Defendants' compliance with industry standards are sufficiently reliable to survive a challenge under *Daubert*.[60] "[Q]uestions related to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration."[61] Here, Defendants' critique of Allen's testimony is best addressed on cross-examination—"[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[62]

Finally, the briefing on the present motion and the deposition testimony cited in this briefing suggests that Allen may opine on the credibility of Defendants' fact witnesses.[63] Credibility determinations and decisions as to the weight given to the testimony of fact witnesses

---

[58] *Id.*
[59] *Owen*, 698 F.2d at 240.
[60] *Daubert,* 509 U.S. 579.
[61] *Vitervo v. Dow Chemical Co*., 826 F.2d. 420, 422 (5th Cir. 1987).
[62] *Daubert* at 596.
[63] ECF No. 92-1 at 6.

are the province of the jury.[64] "An expert is in no better position than the jury to evaluate credibility and states of mind" of fact witnesses.[65] Accordingly, expert witnesses are not permitted to provide commentary on the credibility of fact witnesses.[66] The Court grants this aspect of Defendants' motion—Allen may not provide opinions regarding the truthfulness or credibility of fact witnesses.

## C. Allen's Testimony on the Tire Failure.

Defendants next contend that Allen should be precluded from offering opinion testimony on the causes of the tire failure at issue and whether that failure was caused by a manufacturing defect. Defendants contend that Allen is not qualified to offer an opinion on the cause or mechanics of the tire failure. Van Winkle counters that Allen is not a "tire expert" but, instead, bases his opinions on the tire failure from working "in the trucking industry of over 60 years."[67] Nevertheless, Van Winkle then essentially concedes that Allen will be used as a "tire expert." Specifically Van Winkle intends to offer Allen to show: (1) "how the tire could not be underinflated when it failed," (2) that "the trailer was not overloaded when the tire failed," (3) that inspections should have been conducted on the tire, (4) the "existence of road hazards and their effect on tires" based on his professional experience, (5) the "condition, care, and failures of retreaded tires" based on his professional experience, and (6) the "severity of the risks posed by tire failures to other motorists."[68] Van Winkle also cites to testimony by Allen that the tire at issue "was not being operated past its normal life expectancy at the time it blew out."[69] Moreover,

---

[64] *See, e.g., Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 480 (5th Cir. 2007)
[65] *McBroom v. Payne*, No. 06-cv-1222, 2011 WL 1356925 at *3 (S.D. Miss., April 11, 2011).
[66] *United States v. Beasley*, 72 F.3d 1518, 1528 (5th Cir. 1996) ("Absent unusual circumstances, expert medical testimony concerning the truthfulness or credibility of a witness is inadmissible."); *Westcott v. Crinklaw*, 68 F.3d 1073, 1076 (5th Cir. 1995) (expert may not usurp the exclusive function of the jury in weighing evidence and determining credibility, or pass judgment on witness's truthfulness in guise of professional opinion); *Ray v. City of Columbus*, 2011 WL 3629225, at *7 (N.D. Miss. Aug. 17, 2011) (district court excluded expert's opinion that fact witness's testimony was unsupported by physical evidence because it invaded the province of the jury).
[67] ECF No. 101 at 2.
[68] *Id*. at 2-3.
[69] *Id* at 11.

10

despite Van Winkle's  assurances about the limited nature of Allen's testimony, Van Winkle's

opposition brief cites testimony where Allen expressly opines "that a manufacturing defect was

the most likely cause of the [tire] failure."[70]

Allen's CV and report do not show that he has the expertise to opine on the mechanics or cause

of the tire failure at issue in this case, or on the extent to which that tire failure resulted from a

defect in the tire. With respect to tire life expectancy, Van Winkle's argument seems to be that

Allen's testimony is based on "hands-on knowledge" of tires during his 60 years in the

transportation business.[71] Yet, as with his testimony that a manufacturing defect caused the failure,

Allen's CV and report do not establish that he has the special knowledge and expertise that would

enable him to opine on the life expectancy of the tire at issue. Allen's testimony also indicates that

he has little experience or specialized knowledge with respect to tire retreading or tire failures.[72]

---

[70] Q:  I'm going to ask a few questions, just a few. You know, we discussed all of the potential causes, from your experience, of retread tire failure.
  A:  Yes, Sir.
  Q:  And you state in your report that the number one reason of retread failure and all of your years of experience is due to casing being defective, recapped, and not properly adhered to the casing; correct?
  A:  Absolutely.
  Q:  And we eliminated all of the other causes; is that correct?
  A:  That's correct, sir.
  Q:  Okay. So based on the evidence that you've been presented here, do you believe more probably than not that this tire failed because either the casing was defective or the recap was not properly adhered to the casing; correct?
  A:  Absolutely.
  Q:  And that's based on how many years of experience?
  A:  Sixty-two being in the business, not counting that I've been around trucks all of my life.
ECF No. 101-11 at 230-231.

[71] ECF No. 101 at 11.

[72] Specifically, Mr. Allen testified as follows:
  Q:    Have you ever worked for a tire manufacturer?
  A:    No, sir, I have not
  Q:    Have you ever worked for a company that manufacturers retreaded or recapped tires?
  A:    No, sir.
  Q:    Have you ever consulted with a company that recaps or retreads tires?
  A:    No, sir.
            ***
  Q:    Do you have any educational background in the manufacturing of tires?
  A:    No, sir.
            ***
  Q:    Have you ever been involved in the process of retreading or recapping a tire?

Indeed, there are limited references to tires in Allen's expert report, and most of those references relate to a regulatory requirements for inspecting a tractor-trailer's systems, including tires.[73] In sum, Allen's opinions as to the mechanics or cause of the tire failure at issue, the tire retreading process, or the normal life expectancy of the tire at issue are not admissible. Allen may, however, testify as to industry standards and practices with respect to inspecting and maintaining tires on commercial vehicles, such as the tractor-trailer at issue here. The Court will therefore grant Defendants' motion in this regard.

### D. Accident Reconstruction

Finally, Defendants argue that Allen should be precluded from offering his opinion as to the cause of the accident on the grounds that he is not an accident reconstruction expert and does not have expertise in accident reconstruction. The Court agrees. Van Winkle concedes that Allen "is not being offered as an accident reconstructionist…."[74] Yet, Van Winkle then argues that Allen should be able to opine that a manufacturing defect caused the tire failure which, in turn, caused the accident and Van Winkle's injuries.[75] As explained above, Allen is not qualified to offer opinions on the cause or mechanics of the tire failure, nor is he qualified to opine that this defect was the cause of the accident. Accordingly, the Court will grant Defendants' motion in this regard.

---

A:     I already answered that. No, sir.
*** 
Q:     Have you ever been involved in the manufacturing of a tire?
A:     Already answered that. No, sir.
*** 
Q:     Have you published any materials as it relates to the retreading and recapping of tires?
A:     No, sir. I'm in the trucking business, not the retreading – but I want to know, every time I had a blowout, why it happened so I can make sure it didn't happen again, sir.
Q:     Have you ever presented on the topic of retreading and recapping tires?
A:     I'm not qualified to do that, sir. I'm qualified to know what tires look like and the condition they're required to be kept in to be safe for myself and everybody around me, sir.
ECF No. 92-4 at 73, 76, 77, 228.
[73] ECF No. 92-2.
[74] ECF No. 101 at 13.
[75] Id.

### III.
#### CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion in Limine [ECF No. 92] in part. Mr. Allen may not testify on the meaning of, or Defendants' compliance with, federal safety regulations. Allen also may not offer opinions on the mechanics or cause of the tire failure at issue, including, but not limited to, whether the tire failure resulted from a manufacturing defect. Allen also may not provide opinions regarding the truthfulness or credibility of fact witnesses. Finally,  Allen may not testify as an accident reconstruction expert. In all other respects, the Motion in Limine is DENIED.

THUS DONE in Chambers on this 13th day of September, 2022.


_____

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE